UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JANET BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 4:12-cv-40-WGH-RLY |
| ) | |
| RIVERBOAT INN CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE EXPERT TESTIMONY**

This matter is before the Court on Defendant's motion in limine (Dkt. 35) to exclude certain expert testimony by Richard Hicks, a forensic engineering consultant. The motion has been fully briefed, and the Court, having considered the motion, the parties' filings, and relevant law, and being duly advised, hereby **GRANTS** the motion **in part** and **DENIES** it **in part**.

## I.   Background and Legal Standard

The Court reserves discussion of the facts and controlling law to its analysis of the merits of Defendant's motion below. At the outset, though, the Court notes that this action is in federal court as a matter of diversity jurisdiction. (*See* Dkt. 1 at ¶¶ 3–4). Therefore, although the merits of Plaintiff's claim will be judged on Indiana tort law, federal law controls the admissibility of evidence. *See* Fed. R. Evid. 1101(a)–(b); *see also Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005). As a result, Defendant's motion to constrain expert testimony must be viewed through the lens of the Federal

Rules of Evidence and their application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.

## II. Discussion

Defendant's motion places four questions before the Court:

(A) May Hicks express an opinion as to the cause of Plaintiff's fall without ruling out all other potential causes?

(B) May Plaintiff present evidence of building code violations?

(C) May Hicks testify as to the cause of a blood blister on Plaintiff's foot?

(D) May Hicks testify about lighting conditions around the staircase?

The Court addresses each question in turn.

### A. Hicks may express an opinion as to conditions that were "a cause" or "related to causation" of Plaintiff's fall.

Defendant asks the court to hold that any testimony by Hicks or any other expert is inadmissible to the extent it expresses "any opinion on the causation of Burton's fall formed without considering how Burton's own actions contributed to her fall." (Dkt. 35 at 1). As the basis for this motion, Defendant argues that '[i]t is well settled in Indiana that an expert may not give an opinion about the causation of an injury without ruling out other relevant possible causes." (Dkt. 35-1 at 2). In response, Plaintiff clarifies that she will not ask Hicks to testify as to a single, definitive cause of her fall but, rather, to identify "dangerous conditions that were 'a cause' or 'that were related to causation'" of her fall. (Dkt. 37 at 4). Plaintiff's representations are consistent

with Hicks's expert report (*see* Dkt. 35-5 at 2, 7, 10) and his deposition testimony (*see* Dkt. 35-3 at 7:4–8:18).

Comparing these stances against one another, the Court interprets Defendant's motion as asking the Court to hold that in order to opine that <u>any</u> condition was <u>a</u> cause of Plaintiff's fall, he must first opine conclusively and exhaustively that <u>no</u> other condition or human factor was <u>a</u> cause of the fall. The Court cannot do so. The Seventh Circuit has held that "an expert need not testify with complete certainty about the cause of an injury; rather he may testify that one factor could have been a contributing factor to a given outcome." *Gayton v. McCoy*, 593 F.3d 610, 618–19 (7th Cir. 2010). In other words, an expert need not rule out every possible cause of an injury in order to opine that one factor is a possible cause. The question of causation ultimately is reserved for the jury, and other potential causes are proper subjects for cross-examination. *Id.* at 619.

Defendant cites two cases in support of its argument: *Barber v. United Airlines, Inc.*, 17 F. App'x 433 (7th Cir. 2001), and *Tucker v. Nike, Inc.*, 919 F. Supp. 1192 (N.D. Ind. 1995). The Court does not read either as endorsing the broad rule Defendant proposes or as contradicting *Gayton* but does find that *Tucker* presents some boundaries for the scope of Hicks's testimony.

In *Barber*, the plaintiff sought to offer expert testimony to show a weather system's impact on a plane crash. *Id.* at 435–36. The trial court disallowed the testimony because the expert was confronted with and rejected weather data and pilot testimony that contradicted his opinion. *Id.* at 435, 437. The Court

3

of Appeals affirmed "because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and thus fails to 'assist the trier of fact.'" *Id.* at 437 (quoting Fed. R. Civ. P. 702). The Court of Appeals also held that the trial judge did not err in barring more limited testimony about the effect of thunderstorms generally because such testimony only would have repeated points already admitted by the defendant and therefore would not have contributed to resolving any issue of fact. *Barber*, 17 F. App'x at 437.

Accordingly, the Court reads *Barber* as suggesting only that expert testimony should be barred when either (a) the expert has been confronted with evidence contradicting his theory but has "cherry-picked the facts he considered to render an expert opinion," or (b) the expert's testimony would only duplicate facts already established by an adverse party's admissions. *See id.* at 437–38. So far as the Court is aware, Defendant is not admitting the existence of any of the unsafe conditions to which Hicks seeks to testify. Nor does the Court have any reason to believe that Defendant has confronted Hicks with any evidence (beyond unsubstantiated suppositions) that Plaintiff's fall actually was caused by age, intoxication, or any of the other human factors Defendant would like Hicks to rule out before testifying about unsafe conditions. Therefore, the Court is not persuaded that *Barber* presents any reason to bar expert testimony on dangerous conditions as potential causes of Plaintiff's fall.

In *Tucker*, a products liability action, the only evidence the plaintiff submitted in response to the defendant's summary judgment motion was the

4

testimony of a podiatrist who opined that the "back tab pull" on a pair of basketball shoes was defective and caused the plaintiff's Achilles tendon to rupture. *Tucker*, 919 F. Supp. at 1195–96. The podiatrist acknowledged that the injury might have been caused by any of a hoard of other phenomena, including, for example, the plaintiff's age, his level of physical conditioning, whether he had warmed up properly before playing, or even whether he had experienced problems with the Achilles tendon prior to the rupture. *Id.* at 1196. However, the podiatrist never so much as asked the plaintiff about any of these factors. *Id.* The district court granted summary judgment on grounds that the podiatrist's testimony would be inadmissible. *Id.* at 1197. Although the plaintiff purported that the podiatrist's testimony was scientific evidence, the court found that his failure to consider and rule out such obvious alternative causes before singling out the shoe as the exclusive cause of the injury rendered his testimony "nothing more than 'subjective belief' and 'unsupported speculation'" and therefore not sufficiently scientific to be admissible under *Daubert*. *Id.* (quoting *Porter v. Whitehall*, 9 F.3d 607, 613 (7th Cir. 1993)).

The Court agrees that *Tucker* set forth a sound approach but remains unpersuaded that it applies to the markedly different factual scenario at issue here. In *Tucker*, the podiatrist sought to testify that the plaintiff's shoe was the sole cause of his injury without contemplating numerous other factors that obviously might have caused or contributed to the rupture. Here, Plaintiff represents that Hicks will testify only that certain dangerous conditions were

5

present on the premises on the night of Plaintiff's fall and that certain of those causes likely contributed to the fall. Hicks's report and deposition testimony are consistent with that representation.

In sum, the Court finds that *Gayton* controls Defendant's request and that *Tucker* provides additional guidance. On the basis of *Gayton*, the Court **DENIES** Defendant's motion to the extent it declines to bar Hicks or any other expert from testifying to <u>any</u> cause of Plaintiff's fall without first ruling out <u>all</u> other potential causes. Defendant will have ample opportunity to probe Hicks's failure to credit other potential causes on cross-examination and to undermine the credibility of Hicks's conclusions during closing arguments. The Court has reached this conclusion largely on the basis of Plaintiff's assurances that Hicks will not testify as to an exclusive cause. For that reason, and because the Court finds *Tucker*'s logic persuasive, the Court **GRANTS** Defendant's motion to the extent it holds that neither Hicks nor any other expert may testify as to an <u>exclusive</u> cause of Plaintiff's fall without first ruling out all other potential causes.

### A. Plaintiff may present evidence of building code violations that may have contributed to Plaintiff's fall.

Defendant asks the Court to prophylactically exclude "[e]xpert testimony by Richard Hicks or any other expert regarding any alleged building code violation that did not contribute to the accident." (Dkt. 35 at 1). Defendant's brief advocates for a more sweeping order holding that any reference whatsoever to building code violations is irrelevant and inadmissible. (*See* Dkt. 35-1 at 4–8). The Court declines to impose such a broad limit and instead

holds that references to building code violations that otherwise comply with the Federal Rules of Evidence are admissible.

Defendant argues that none of the building code violations Hicks cites in his report possibly could have caused Plaintiff's fall and that any evidence of a code violation therefore is irrelevant and inadmissible. (*See* Dkt. 35-1 at 4–6). According to Defendant, all but two violations cited existed more than halfway up the stairs, and Plaintiff fell before reaching the halfway point, so none of those violations could have caused her to fall. (Dkt. 35-1 at 4–6). The remaining violations—the absence of a handrail on the right side of the staircase and an improperly sized rail on the left side—also are irrelevant in Defendant's estimation: Plaintiff, her left hand being full, did not even try to use the handrail that was available to her, so the presence of two compliant handrails would have done nothing to prevent her fall. (Dkt. 35-1 at 5).

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible to the extent it is not excluded by another rule of evidence or a constitutional, statutory, or common law evidentiary privilege. *See* Fed. R. Evid. 402.

The Court declines to hold at this stage that no evidence of a building code violation existing more than halfway up the staircase is relevant. Although Plaintiff has stated she thinks she fell before reaching the halfway point on the staircase, all that is certain is that she does not remember exactly

7

where she fell. (*See* Dkt. 35-4 at 3–4). This leaves the location of the fall as a question of fact to be determined at trial. If evidence is offered to show that Plaintiff fell more than halfway up the stairs, evidence of code violations in that area would seem to bear on the causation of Plaintiff's fall. Accordingly, the Court cannot state categorically that no evidence of violations existing only above the halfway point is relevant.

Nor can the Court accept at this point that evidence regarding handrails is categorically irrelevant. Defendant correctly notes that Plaintiff has testified that, because she was carrying a dress and a computer in her left hand, she could not have grabbed the handrail on the left side of the staircase. (*See* Dkt. 35-4 at 2). However, this admission does not logically command, as Defendant suggests, that Plaintiff could not have used a handrail on the right side of the stairway if one was available to her. Nor does it foreclose the possibility that, if the existing handrail was properly sized, Plaintiff would have transferred her belongings to her right hand and used the railing with her left. Indeed, Plaintiff also testified that she could not have used the existing handrail because it was heavily wrapped with lighting. (*See* Dkt. 35-4). A jury reasonably could infer from this statement that Plaintiff contemplated using that railing but did not because she did not think she could grip it effectively. The absence of two properly fitted handrails bears on the cause of Plaintiff's fall and therefore is a relevant fact.

Accordingly, the Court **DENIES** Defendant's motion to the extent it declines to categorically bar testimony about building code violations. Plaintiff

8

may present evidence of code violations so long as—just as with any other evidence—she establishes its relevance and the evidence is not inadmissible for some other reason.

The Court acknowledges Defendant's arguments that evidence of a building code violation is no basis for a jury instruction on negligence per se. Because the Court has not received any proposal for such an instruction, these arguments are premature, and the Court reserves any comment on them until jury instructions are submitted.

### B. Plaintiff may elicit testimony regarding the cause of the blood blister on her toe only from a properly qualified witness.

Defendant asks the Court to exclude "[e]xpert testimony by Richard Hicks or any other expert regarding the cause of plaintiff's injuries unless offered by a person whose opinion is based in sufficient medical training, education and/or expertise." (Dkt. 35 at 1). At bottom, Defendant seeks to prevent Hicks, a civil engineer with no training or expertise in medicine, from testifying that a blood blister Plaintiff discovered on her toe after she fell shows that her foot slid forward into a riser and therefore validates his theory that Plaintiff slipped on debris on the staircase. (Dkt. 35-1 at 8–10). Defendant supports this position with Indiana case law holding that only physicians and surgeons may testify to the medical causation of an injury. (*See id.*). In response, Plaintiff argues that medical expertise is not necessary to understand or explain causation of an injury as simple as a blood blister. (*See id.*).

With a single exception, the Federal Rules of Evidence allow witnesses to testify only about matters of which they have personal knowledge. Fed. R.

9

Evid. 602. The exception allows witnesses offering expert testimony to—in certain circumstances—testify to facts of which they lack personal knowledge but that they nevertheless discovered and used to form an expert opinion. *See* Fed. R. Evid. 602, 703. If testimony is not based on personal knowledge and does not comply with the rules governing expert testimony, it is inadmissible.

Taken together, Rules 602 and 703 mean that Plaintiff may elicit testimony of the cause of her blood blister only under two circumstances. First, any witness with personal knowledge of the circumstances under which the blister formed may testify to those facts. Second, an expert witness may testify to the cause of the blister, but only if he is qualified to do so in accordance with the strictures of Rule 702 and *Daubert*.

Nothing before the Court indicates that Hicks has any personal knowledge of Plaintiff's blood blister or what caused it. Hicks gained one hundred percent of his knowledge concerning Plaintiff's blood blister by reviewing Plaintiff's testimony. (*See* Dkt. 37-8 at 16). Lacking any personal knowledge on the topic, Hicks may testify to the cause of Plaintiff's blood blister only in his capacity as an expert witness and as bound by Rule 702 and *Daubert*.

In the Seventh Circuit, engineers are not qualified to give expert testimony about the physical cause of an injury. *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). In *Goodwin*, the defendant called a mechanical engineer to testify about the design of a lawnmower. *Id.* at 604–605. The district court would not allow the engineer to testify that the

plaintiff's injury could not have been caused by the discharge of a wing nut from the mower into the plaintiff's eye. *Id.* at 609. Affirming, the Court of Appeals held that the engineer "has neither a medical degree nor any medical training, and an individual with a degree in mechanical engineering is not qualified to give expert testimony on medical questions, including the cause of an eye injury." *Id.*

The Court finds no reason to treat Plaintiff's blood blister as different from Goodwin's eye injury and therefore must find that Hicks is unqualified to testify about its causation. During his deposition, Hicks testified that Plaintiff's blood blister was "indicative of a significant force into the riser" and "consistent with more force than just stubbing your toe. (Dkt. 37-8 at 15). This line of testimony directly implicates the cause of a physiological symptom and therefore might be appropriate if offered by an expert in medicine or human anatomy or physiology. *See Goodwin*, 232 F.3d at 609. Hicks has admitted that he has no such expertise; in fact, the entirety of his knowledge of the cause of blood blisters comes from having experienced one or two himself. (Dkt. 37-8 at 16). Hicks's expertise is in engineering, and Plaintiff has presented no argument that specialized knowledge of engineering would better enable the trier of fact to understand the cause of Plaintiff's blood blister. Therefore, testimony on this topic exceeds the scope of what is permitted by Rule 702 and *Goodwin*.

The Court rejects Plaintiff's argument that Hicks's testimony would be permissible because the cause of a blood blister is a matter simple enough to

11

be explained and understood without testimony from a medical expert. First, the cases Plaintiff cites for that proposition do not apply here. They are pre-*Daubert* Indiana cases that discuss when expert testimony is <u>required</u> under Indiana law. *See Brown v. Terre Haute Reg'l Hosp.*, 537 N.E.2d 54, 61 (Ind. Ct. App. 1989); *Basset v. Glock*, 368 N.E.2d 18, 22 (Ind. Ct. App. 1977). Defendant's motion raises the fundamentally separate issue of when expert testimony is <u>permitted</u> under Rule 702 and *Daubert*.

Second, Plaintiff's argument only reinforces the impermissibility of Hicks's testimony on this matter. Rule 702 allows expert testimony only where scientific, technical, or specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. By conceding that the trier of fact does not need expert testimony to understand the cause of Plaintiff's blood blister (*see* Dkt. 37 at 10–11), Plaintiff necessarily concedes that expert testimony on that matter is inappropriate under Rule 702. If that is so, any admissible testimony about the cause of Plaintiff's blood blister must be rooted in personal knowledge. *See* Fed. R. Evid. 602. Because Hicks lacks personal knowledge on this topic (*see* Dkt. 37-8 at 16), he cannot testify about it.

Therefore, the Court **GRANTS** Defendant's motion to the extent it holds that any testimony about the cause of Plaintiff's blood blister must be grounded in personal knowledge or in sufficient medical training, education, or expertise to satisfy Rule 702, *Daubert*, and *Goodwin*. The Court finds that Hicks lacks both. If Plaintiff can satisfy the remaining criteria of Rule 703,

12

Hicks may testify superficially that Plaintiff's statement that she developed a blood blister was among the facts he considered in rendering his opinion. Any deeper testimony will be ruled impermissible.

### C. Plaintiff may introduce admissible evidence regarding lighting conditions around the staircase.

Finally, Defendant asks the Court to exclude "[e]xpert testimony by Richard Hicks or any other expert regarding the lighting of the staircase based on Burton's opinion, hotel surveillance video, and/or photographs taken by Katie Linville." (Dkt. 35 at 2). This request rests on two arguments: that the staircase's lighting is a topic on which expert testimony is inappropriate because it will not be helpful to the jury, and that testimony about the staircase's lighting will be based on evidence that is not credible. The Court disagrees with Defendant on both counts.

#### 1. Expert testimony on the staircase's lighting may assist the jury and therefore is not categorically improper.

Defendant argues that Hicks may not testify to the stairwell's lighting because it "is a question of fact which will not help the jury." (Dkt. 35-1 at 12). Defendant relies principally on a collection of Indiana decisions it characterizes as holding that an expert may not testify to any matter the jury could understand on its own. (*See* Dkt. 35-1 at 11–12). The Court declines to accept Defendant's representations as to the prevailing law and the nature of Hicks's testimony.

The Court agrees that expert testimony is admissible only if it "assists the trier of fact in understanding the evidence or determining a fact in issue,"

13

*Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (citing *Daubert*, 509 U.S. at 591–92), but the evidence in question here does not fail on that ground. Because this action is being tried in federal court, the Federal Rules of Evidence—not the Indiana counterparts Defendant has presented—control. Fed. R. Evid. 1101. Defendant also refers to the Seventh Circuit's opinion in *Ancho v. Pentek Corp.* for the proposition that "an expert . . . must testify to something more than what is 'obvious to the layperson'" (*see* Dkt. 35-1 at 12 (quoting 157 F.3d 512, 519 (7th Cir. 1998))), but this heavily truncated citation does not tell the whole story. The *Ancho* court actually affirmed exclusion of a witness's testimony because it found that his "professed knowledge of, and expertise in, mechanical engineering, by itself, falls short of qualifying him as an expert to render an opinion" that was not overly simplistic. 157 F.3d at 519. In fact, the court preceded the sentence quoted by Defendant by noting that "'the trial court is not compelled to exclude the expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension.'" *Id.* (quoting *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996)).

More broadly, the Court disagrees that expert testimony touching on the stairway's lighting would not assist the jury. Whether the staircase was properly lit may be a fact that the jury can decide without expert assistance, but it is an underlying fact—not an ultimate issue to be decided in this trial. Based on his report, the Court infers that Hicks will testify that (a) poor lighting is a common cause of falls on staircases; (b) he reviewed evidence suggesting

14

the staircase at the Riverboat was poorly lit; and (c) he therefore has reason to believe poor lighting contributed to Plaintiff's fall.  (*See* Dkt. 35-5 at 7–8, 10).  The crux of this testimony is not whether the staircase was properly lit but that poor lighting is associated with falls and that, in his opinion, poor lighting may have contributed to Plaintiff's fall.  That other evidence suggests the staircase may have been poorly lit enters the equation only as a set of facts Hicks considered in formulating his opinion, and Federal Rule of Evidence 703 expressly states that an expert witness may testify about such evidence in certain circumstances.

The Court finds this distinction well-illustrated by *Dhillon*, in which a forklift operator sued its manufacturer after the machine jerked abruptly, caused his leg to slip out the open back of the machine, and crushed the leg against an I-beam.  269 F.3d at 867–68.  The district court granted summary judgment after excluding expert testimony asserting that, had the back of the forklift featured a properly secured door instead of being completely open, Dhillon's leg could not have slipped out and been injured.  *Id.* at 868.  The Court of Appeals applied *Daubert* and *Ancho* and affirmed because, among other reasons, that testimony amounted to nothing more than a statement of common sense that jurors could easily understand without expert assistance and therefore would not aid the jury.  *Id.* at 871.

Hicks offers testimony on a more complex issue: whether the Riverboat's staircase featured structural deficiencies and dangerous conditions that may have contributed to Plaintiff's fall.  Defendant has not objected to this broad

category as inappropriate for expert testimony, nor has Defendant objected to Hicks's fitness to present it.  Hicks has identified reference materials that characterize poor lighting as a dangerous condition contributing to falls (*see* Dkt. 35-5 at 5–6), and Defendant has not argued that this principle is so simple that an expert may not testify to it.  Unlike in *Dhillon*, the arguably simplistic portion of Hicks's testimony will be an underlying fact—not his entire presentation.  Accordingly, the Court cannot conclude that the quality of lighting around the staircase is too simple a matter for Hicks to address.

### 2. Plaintiff may elicit expert testimony about the staircase's lighting so long as it complies with Rule 703.

Defendant also argues that Hicks should not be allowed to testify about the staircase's lighting because he did not personally observe the staircase on the night of Plaintiff's accident and because the three pieces of evidence on which he bases his conclusion—a surveillance video, photos taken by Katie Linville after the accident, and Burton's own testimony—are unreliable.  (*See* Dkt. 35-1 at 12–14).  According to Defendant, Hicks has admitted that the surveillance video was of poor quality, Linville has admitted that her pictures do not accurately portray the staircase, and Burton's own testimony is necessarily self-serving and therefore an impermissible basis for expert testimony.  (*Id.* at 13–14).

Federal Rule of Evidence 703 allows an expert witness to base an opinion on evidence he has not personally observed but of which he has become aware. To serve as the basis of the expert's opinion, evidence need not meet any specific standard of reliability—or even be admissible on its own—so long as

16

"experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject . . . ." Fed. R. Evid. 703.  The expert may testify about the underlying facts if they are admissible in their own right; if they are not, she may disclose them only to the extent "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

Assuming Plaintiff can lay adequate foundation, Rule 703 entitles Hicks to base his analysis on the evidence in question here and discuss that evidence before the jury.  Defendant has not addressed Rule 703 or the admissibility, probative value, or prejudicial effect of the surveillance video, Linville's photos, or Plaintiff's testimony and therefore has not advanced any reason to find that Plaintiff cannot lay that foundation.  Therefore, the Court **DENIES** Defendant's motion and declines at this stage to exclude expert testimony about the quality of the staircase's lighting and the facts underlying any conclusions or theories on that topic.  Of course, such testimony must comply with Rule 703 and other applicable evidence law.

### III.   Conclusion and Order

The Court **GRANTS** Defendant's motion **in part** and **DENIES** it **in part**, for the reasons and to the extent set forth above.  Like most rulings on motions in limine, the Court's rulings here are conditional.  Although unlikely in these particular matters, should evidence actually admitted at trial substantially change the posture of these rulings, the Court may nevertheless admit evidence at trial that would violate this Order.  However, no party may mention

17

such evidence in opening statements, nor may any party offer such evidence without first gaining the Court's express permission. The parties also should be prepared to present offers of proof outside the presence of the jury if deemed necessary by counsel to protect their record.

    **SO ORDERED** the 20th day of November, 2013.

                                                       William G. Hussmann, Jr.
                                                       United States Magistrate Judge
                                                       Southern District of Indiana

Served electronically on all ECF-registered counsel of record.